TEALL et al. v. SLAVEN et al.

(*Circuit Court, N. D. California.*  December 30, 1889.)

1. EQUITY—JURISDICTION—FRAUD—CANCELLATION OF INSTRUMENTS.
    There may often be a remedy, at law, for fraud, but where it is desirable to remove a cloud from the title to real estate by decreeing a cancellation of a fraudulent conveyance, that remedy, being more complete, courts of equity will take jurisdiction, and grant appropriate relief.

2. SAME—LIMITATION OF ACTIONS—DISCOVERY OF FRAUD.
    In providing for limitations of actions founded on fraud, the legislature has adopted the principle established by courts of equity, that the cause of action shall not be deemed to have accrued until the "discovery of the facts constituting the fraud;" and to ascertain what conditions constitute a discovery, within the meaning of such statutes, the principles established in equity jurisprudence, whence the idea was derived, must be applied.

3. SAME—NOTICE.
    The established principles as to the discovery of fraud, are: That the party must be diligent in making inquiry; that means of knowledge are equivalent to knowledge; that a clue to the facts, which if diligently followed would lead to a discovery, is, in law, equivalent to a discovery.

4. SAME—RECORD OF FRAUDULENT DEED.
    Where a deed alleged to be fraudulent, bearing evidence of fraud upon its face, has been duly recorded upwards of 30 years, it affords just as strong evidence of fraud to the parties defrauded, as it does to subsequent purchasers. As to the parties defrauded, the question, of what the record imparts knowledge, is not as in the case of subsequent purchasers, a question of statutory constructive notice, but of diligence.

5. SAME—PLEADING.
    Where a bill to annul a conveyance on the ground of fraud is filed, more than 30 years after the performance of the acts of fraud complained of; and, in order to bring the case within the statutory exception, it is alleged, that, "the acts constituting the fraud" have only been discovered within 3 years before the filing of the bill, it is, also, necessary to set forth in the bill, *specifically,* what the impediments were to an earlier prosecution of the claim; how the complainant came to be so long ignorant of his alleged rights; the means used by the respondent to keep him in ignorance, and how he first came to a knowledge of his rights.

6. SAME—LACHES—NON-RESIDENCE.
    The non-residence and continued absence of the complainant from the state does not excuse a want of diligence in ascertaining his rights.

7. SAME—FACTS IN SUIT.
    It is alleged in the bill, that T., a citizen and resident of New York owning land in California, executed a power of attorney to D., to take exclusive possession and control of the same, and to sell and convey it at his discretion, which power of attorney was duly recorded and remained unrevoked till the death of T., on August 12, 1857; that after the death of T., on September 17, 1857, D. by virtue of said power of attorney executed in the name of D. a conveyance expressing a consideration of $5,000, to R., of a large amount of said real property situated in the city of San José, the said conveyance bearing date August 1, 1857, 11 days prior to the death of T.;

that on the same day, for a like consideration expressed, R. conveyed the same property to D., by deed bearing the same date; that said conveyances were made without consideration, and for the fraudulent purpose of enabling D. to appropriate said property of T. to his own purposes: that said conveyances were acknowledged on September 17, and recorded on October 3, 1857; that the numerous respondents are grantees direct, and mesne, from D., and that they purchased with a knowledge of the title of T.; that D. in his life-time, and respondents, and their grantors, since D.'s death in 1876, concealed these fraudulent acts from complainants, a portion of the heirs of T., who have always lived in the state of New York and never have been in California, and that they did not discover these fraudulent acts until some time in the year 1887, a short time before the commencement of this suit. *Held,* (1) that the suit is barred by the statute of limitations of California; (2) that the cause of suit is stale, and will not be enforced within the established principles of equity jurisprudence; (3) that during the 32 years that have elapsed since the death of T., and the 14 years since the death of D., presumably the only parties who knew their exact relations to each other, and to this land, no sufficient diligence has been exercised by complainants to preserve their right of suit; and (4) that the impediments to a prosecution of the rights of complainants; how they were so long ignorant of them; the means of concealment adopted by respondents, and how complainants first came to a knowledge of their rights, are **not sufficiently set out in** the bill.

*(Syllabus by the Court.)*

In Equity.   On demurrer to the second amended bill.

This is a bill filed by three parties claiming to be a portion of the heirs at law of Oliver Teall, deceased, and entitled to three-fifteenths of the property in question, against many defendants, said to be 336 in number, to set aside a conveyance from said Oliver Teall, by his attorney in fact, Davis Devine, to A. L. Rhodes, and a conveyance from A. L. Rhodes to said Davis Devine, made in 1857, on the ground of fraud, and to compel a conveyance of their undivided share of property, which consists of a large number of lots, said to be 1,000 or more, situate in the city of San José.   The other heirs, with one exception, who is made a defendant, declined to join, and for that reason are not made parties. The bill alleges, that, the deceased, Oliver Teall, in 1852, made a power of attorney to Davis Devine, giving him full power to take possession of, and to control and sell all real estate owned by said Teall in San José, which power of attorney was duly acknowledged and recorded on March 16, 1852; and that it continued in force and unrevoked down to the time of the decease of said Teall.   That said Teall died August 12, 1857; that on August 1, 1857, and down to his death, Teall owned the property in question; that at a date unknown, but by a deed bearing date August 1, 1857, said Davis Devine, as the attorney in fact of said Teall, purporting to act under the said power of attorney, conveyed said property to one, A. L. Rhodes, and thereupon, on the same day, said Rhodes conveyed the same to said Devine; that the several deeds of conveyance expressed a consideration of $5,000 each, but that in fact no consideration was paid by either; that the conveyance by Devine was not authorized by Teall, but was made for the fraudulent purpose of obtaining the property for himself; that the conveyances, although bearing date August 1, were not, in fact, executed till September 17, 1857, on which day they were acknowledged; that they were recorded on October 8, 1857, and are still of record; that the defendants in this case are in possession of their respective portions, either under conveyances direct, or mesne, from said Devine, *made subsequent to the record of said pretended,*

*and fraudulent conveyances;* or as heirs or devisees of said Devine; that "said possession was taken by said defendants, and each of them, *with full notice of the title of said Oliver Teall,* and his heirs to said premises, and of the relation of principal and agent subsisting between him and said Devine, as heretofore averred *at the time of the date of said pretended and fraudulent conveyances, and are not purchasers of said premises or any part thereof in good faith and for value.*" This it will be observed, is somewhat indefinite and evasive, as it merely alleges that at the *date* of those conveyances, the parties knew that Teall owned the property, and the relation of the parties, but it does not aver squarely that they or any of them knew that the conveyances were made without consideration for a fraudulent purpose, unless it can be inferred from the averment of the legal conclusion, merely, that they were "not purchasers in good faith." The bill, also, avers that the land was within the pueblo of San José, and was confirmed to the city for the benefit of its grantees; that a patent was issued to the city on June 4, 1884, and that a portion has already been conveyed by the city of San José to some of the defendants, and the legal title under the patent to the remainder is still vested in the city. In the second amended bill are the following additional allegations: That complainants are natives and citizens of the state of New York; that they have always resided in said state, *and were never in the state of California;* that Devine died *in 1876,* and during his life, and after the death of Teall, he "carefully *concealed* the truth of the facts, as alleged, from complainants, and falsely represented' to them, that the said Devine was the owner of the property described," and after Devine's death, his heirs and others claiming under him, "*concealed* the truth from the complainants, and persistently, falsely, and fraudulently represented to claimants that all of said property belonged to said Devine in his life-time;" and all on record at his death belonged to him; "that *none of complainants knew of said conveyances, to-wit; said conveyance from Davis Devine as agent of Oliver Teall to A. L. Rhodes, and said conveyance of A. L. Rhodes to Davis Devine, until the year 1887;*" and "*that the said false and fraudulent representations* made by said Devine and by his widow, and by their agents, etc., were *believed by the complainants to be true,* until the year 1887, when they were informed and became cognizant of the truth, as herein set forth in their bill of complaint."

*J. B. Lamar, J. E. Foulds* and *W. H. Castle,* for complainants.

*Estee, Wilson & McCutchen* and *S. F. Leib,* for respondents.

Before SAWYER, Circuit Judge.

SAWYER, J. The foregoing statement contains all the allegations of the bill in any way affecting the points at issue, after having been twice amended; and as the bill is unverified by the oath of any person, it must be presumed to state the case of the complainants as favorably to themselves as the facts will justify. The defendants demur, and rely mainly upon four points: (1) That the complainants have a complete remedy at law; (2) that the cause of suit is stale; (3) that the suit is barred by the statute of limitations of California; and (4) that the facts

are insufficient to constitute a cause of suit, and there is no equity in the bill.

As to the first ground it is urged, that if the conveyance from Devine to Rhodes, under his power of attorney from Teall, was not executed till after Teall's death, as alleged, then it was utterly void, for want of authority, for the power of attorney was, necessarily, vitiated, or revoked in law, by the death of Teall, and this could be shown in an action at law to recover the lands. Hence there is no necessity for going into equity, as there would be a full, speedy, and complete remedy at law. Fraud can often be made available at law, as well as in equity; but it does not follow that the remedy at law is as complete, as in equity. Thus, in this case, suppose a recovery should be had at law, by showing that these conveyances are void upon the ground alleged, the conveyances would be still outstanding of record, uncanceled, and the apparent title of record would still be in those holding under them. Though fraudulent, they would constitute a cloud upon the title. Fraud has always been one of the principal heads of equity jurisdiction, and in this case, in order to afford a complete remedy for the fraud alleged, it would be necessary to decree the conveyances to be fraudulent, and cancel them, or compel a conveyance of the apparent title in defendants to the parties entitled. No other remedy would be adequate. This point is therefore overruled.

But the points that the cause of suit is stale, upon the well-established principles of equity jurisprudence; and that the suit is barred by the statute of limitations of California, which is applicable to suits in equity, as well as to actions of law, and will therefore be enforced in the national courts, I think are clearly well taken. The principles that govern, are applicable to both points, and I shall briefly consider them together. The complainants insist, that, this is a suit "for relief on the ground of fraud," under section 338, Code Civil Proc., which is barred in three years. But the fourth clause adds: "The cause of action in such case, not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." The complainants urge that they did not discover the facts till 1887, and that they are, therefore, within this saving clause. This provision was imported into the statutes of limitations from the equity practice of restraining the setting up of the statute in actions at law, founded upon fraud, under similar circumstances, until the time had elapsed after the discovery of the facts, constituting the fraud. See *Bank* v. *Kissane*, 13 Sawy. 2, 32 Fed. Rep. 429; *Norris* v. *Haggin*, 12 Sawy. 53, 28 Fed. Rep. 275. I had occasion to consider this whole subject very fully in the last case cited, in which I said:

"To ascertain of what acts a discovery of the facts constituting the fraud affording the ground for relief consists, we must go to the principles established in equity law, whence the idea was derived. The settled principles on this point are, that the party defrauded must be diligent in making inquiry; that the means of knowledge are equivalent to knowledge; that a clew to the facts, which if followed up diligently, would lead to a discovery—is, in law * * * equivalent to knowledge. In stating the policy of statutes of lim-

itations, and in illustrating these principles of construction applicable thereto, Mr. Justice SWAYNE, speaking for the court, in *Wood* v. *Carpenter, supra,* [101 U. S. 139] together with much more to the point, said: 'Statutes of limitation are vital to the welfare of society, and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose, by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is, constantly, destroying the evidence of rights, they supply its place by presumption, which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself, a conclusive bar. The bane and the antidote go together.' * * * 'It will be observed, also, that there is no averment that during the long period over which the transactions referred to, extended, the plaintiff ever made or caused to be made the slightest inquiry in relation to either of them. The judgments confessed were of record, and he knew it. It could not have been difficult to ascertain, if the facts were so, *that they were shams.* The *conveyances,* to Alvin and Keller were also *on record in the proper offices.* If they were in trust for the defendant, as alleged, *proper diligence could not have failed to find a clew in every case that would have led to evidence not to be resisted. With the strongest motives to action, the plaintiff was supine. If underlying frauds existed, as he alleges, he did nothing to unearth them. It was his duty to make the effort.* * * * The discovery of the cause of action, if such it may be termed, is thus set forth: "And the plaintiff further avers, that he had no knowledge of the facts so concealed by the defendant until the year A. D. 1872, and a few weeks only before the bringing of this suit." There is nothing further upon the subject. * * * "*Whatever is notice enough to excite attention, and to put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it.*" *Kennedy* v. *Green,* 3 Mylne & K. 722. "*The presumption is that, if the party affected by any fraudulent transaction or management, might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it.*" Ang. Lim. § 187, and note. A party seeking to avoid the bar of the statute on account of fraud, must aver and show that he used due diligence to detect it, and if he had the means of discovery, in his power, he will be held to have known it. *Buckner* v. *Calcote,* 28 Miss. 432, 434. See also, *Nudd* v. *Hamblin,* 8 Allen, 130. * * * Concealment by mere silence is not enough. There must be *some trick or contrivance intended to exclude suspicion and prevent inquiry.* There must be reasonable diligence, and the means of knowledge are the same in effect, as knowledge itself. He does not say that he had not full possession of means of detecting the fraudulent arrangement, if it was fraudulent, or that there had been concealment, and the *possession of such means of knowledge, is, in equity, the same as knowledge itself.*' *New Albany* v. *Burke,* 11 Wall. 107."

What have the complainants in this case done to unearth this alleged fraud? They do not inform us. *They allege that neither of them has ever been in the state of California.* They allege generally that all these 336 defendants, and their indefinite number of grantors, have concealed the alleged fraud, and the only means of concealment alleged, is, that they claimed to own the lands which they had purchased, and that their first grantor, Devine, owned it before them. This bill was filed June 1, 1889, and Teall died August 1, 1857, nearly 32 years before the filing of the bill. San José was then a small town. Now it is a large city. In the nature of things there must have been during that time almost

innumerable transfers of portions of this real estate. These lands are alleged to be held by defendants by direct and through *mesne conveyances* from Devine; much of it must naturally have passed through many hands, during the last 32 years, and the number of those who now hold, and who have held, them during that time, must have run up into the thousands. And all these, under the general allegations of the bill, must have concealed the great fraud by representing to these complainants that Devine once owned the land, and that they owned it by purchase from him. No one of the complainants was ever in California. Did these several defendants and their numerous grantors go to New York to give the complainants this false information, upon which they so confidingly relied? All the defendants' grantors, as well as the defendants, must have purchased with notice of the fraud, or their title cannot be shaken. I presume any party who supposes he has found a clear, apparently perfect title of record to land, and purchased it on the faith of the record, would be very apt to allege that he owned it, and that his grantor before him owned it, when his right should be challenged by a stranger, who claimed it himself. Can such action alone, be concealment of the fraud in such sense as to constitute bad faith and vitiate their titles? Would such a claim alone, be any sort of evidence that he was concealing a known fraud? The first thing to do, it would seem, is to show by other satisfactory evidence, that there was, in fact, a fraud, and that he purchased with knowledge of that fraud. The pleader would seem to base his loose general allegation of notice of the fraud alleged, in making the two conveyances of August 1, 1857, by all deriving title under Devine, upon the fact, that they purchased subsequently to these conveyances having been placed upon the record—this fact being so particularly alleged; and that the record upon its face afforded them such notice of the fraud, as would vitiate their purchase for want of good faith. It may be true, that finding upon the record, the two deeds dated a few days before, but acknowledged and recorded a few weeks after the death of Teall; the first being a conveyance from Teall, by Devine, as his attorney, to Rhodes, and the next by Rhodes to Devine, on the same day, should excite suspicion. But it is not unusual for conveyances to be executed and delivered before acknowledged, and at some subsequent time be either acknowledged, or proved, by the witnesses thereto, and recorded. So that fact is by no means conclusive evidence of fraud. So, also, the law does not encourage dealings between principals and their agents, or trustors and trustees, especially through acts of the agents or trustees, but yet such transactions sometimes do occur, and are not questioned by the principals. But where they have taken place, and have not been called into question by the principals or their representatives for many years, it would seem that strangers ought to be protected from future disturbance by the principals. But however this may be, if the record upon its face afforded purchasers the means of detecting the fraud, it was equally efficacious for the suggestion of fraud to these complainants. If a consultation of the record would bring knowledge home to purchasers, a similar consultation would have brought it home to these complainants.

It is urged however, by complainants, that under the statutes of California, the record of a conveyance is *constructive* notice only to *subsequent* purchasers, and is not such to other parties. Grant it for the purposes of this case; but this is not a question of "*constructive notice;*" it is a question of diligence—whether these complainants and their ancestors, have exercised due diligence in ascertaining their rights and pursuing their remedies? In this, and in all other of the United States, the statutes provide for recording all instruments of conveyance. These laws are presumed to be known by all who are affected by them, and they are in fact, known to all citizens having the slightest degree of intelligence. A storehouse of information is here provided by law, open to all. These conveyances, were, in fact, recorded as required by law, almost 32 years ago —nearly a third of a century. The record was open to the examination of the complainants, and if not constructive notice binding upon them, whether they examined it or not, they *knew* that if Teall or Devine had a title to these lands, that the title to them must be on the record, and that they could find it readily by looking for it; and when found, it would have given them in fact, that same information—actual information—that in law, it communicated to the defendants whether they examined it or not. In order to avoid the inconvenience of the actual notice and relieve themselves from the embarrassment of possessing the same knowledge, in fact, as that imposed by law upon the defendants as purchasers, complainants take pains to aver, that they were non-residents of the state and had never been in it; and did not know that these two conveyances were in existence and on the records of Santa Clara county till 1887. Now if they made inquiries of all these defendants, and these defendants fraudulently told them, as they allege, that Devine owned all the lands that stood in his name on the record, at, and before the time of his death, and they purchased from him, that representation of itself, must necessarily have in fact, by implication, at least, brought to their notice, the existence of these conveyances upon the record. At all events, with the knowledge they must have had that titles are required to be recorded, and that these defendants claimed the land, if they did not consult the record, to see what title Teall and Devine had to these lands, they were guilty of the grossest laches and negligence, and were unaccountably inattentive to their own interests. If they did examine it, in person, or by agents, the record afforded them the same clews to fraud, that were furnished to purchasers, and if followed up vigorously, and intelligently, it could not have failed to unearth any fraud that in fact, existed. If they failed to do this, it was their own fault. As before stated, "the party defrauded must be diligent in making inquiry. The means of knowledge are equivalent to knowledge. A clew to the facts which if followed up diligently, would lead to a discovery is, in law, equivalent to a discovery—equivalent to knowledge," wholly independent, and outside of statutory constructive notice of the contents of a record. *Hecht* v. *Slaney*, 72 Cal. 363, 367, 14 Pac. Rep. 88; *Manning* v. *San Jacinto Tin Co.*, 7 Sawy. 430–433, 9 Fed. Rep. 726.

So, also, the means by which the complainants were so long kept igno-

rant of these rights by the respondents and the impediments, etc., to an earlier prosecution of their claims, are not, sufficiently, set out in the bill. Says the supreme court, in *Godden* v. *Kimmell*, 99 U. S. 211:

"Courts of equity, acting on their own inherent doctrine of discouraging for the peace of society antiquated demands, refuse to interfere in attempts to establish a stale trust, except where the trust is clearly established, or where the facts have been, fraudulently, and. successfully, concealed by the trustee from the knowledge of the *cestui que trust.* Relief in such cases may be sought; but the rule is that the *cestui que trust should set forth in the bill specifically, what were the impediments to an earlier prosecution of the claim, and how he or she came to be so long ignorant of their alleged rights,* and *the means used by the respondent to keep him or her in ignorance, and how he or she first came to the knowledge of their rights.* Badger v. *Badger,* 2 Wall. 87; *White* v. *Parnther,* 1 Knapp, 227. When a party appeals to the conscience of the chancellor in support of a claim, says Mr. Justice FIELD, where there has been laches in prosecuting it, or long acquiesence in the assertion of adverse right, *he should set forth in his bill specifically what were the impediments to an earlier prosecution of the claim; and if he does not. the chancellor may justly refuse to consider his case on his own showing. without inquiring whether there is a demurrer, or any formal plea of the statute of limitations contained in the answer. Marsh* v. *Whitmore,* 21 **Wall. 185."**

**None** of these means are set out in this bill.

The same doctrine is repeated in *Richards* v. *Mackall,* 124 U. S. 187, 8 Sup. Ct. Rep. 437. See, also, *Sullivan* v. *Railroad Co.,* 94 U. S. 806–811; *Brown* v. *County of Buena Vista,* 95 U. S. 160; *Hume* v. *Beale's Ex'x,* 17 Wall. 336; *Hayward* v. *Bank,* 96 U. S. 611; *Speidel* v. *Henrici,* 120 U. S. 377–387, 7 Sup. Ct. Rep. 610. The fact that the complainants lived in "the remote and secluded" regions of the state of New York, far from means of information, and were never in California, cannot excuse them from the use of proper diligence. Says Mr. Justice BRADLEY, in *Broderick's Will Case:*

"Parties cannot thus, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their *status* and condition, and of the vicissitudes to which they are subject." 21 Wall. 519.

Upon this passage I took occasion to observe in the *San Jacinto Tin Case,* 7 Sawy. 433, 9 Fed. Rep. 726:

"It must not be forgotten, not only that the world 'moves on,' but that in this age and country, and in this part of the country, it moves rapidly. Three years now, and especially in California, is longer in events and progress, than twenty years some centuries ago, when the statutes of limitation were adopted in England. Parties cannot lie down to sleep upon their rights, and on waking up many years afterward, find them in the same condition in which they were left."

In this case, Teall, under whom complainants claim, died nearly 32 years ago, and Devine, the other party under whom respondents claim, died in 1876, nearly 14 years ago. So the only two parties who are presumed to know, what their relation to these lands, and to each other

in fact was, have long since died. Under such circumstances several hundred citizens, who have for more than 30 years enjoyed and improved their property by their labor and expenditure of money, in a large city, should not now be deprived of it, by parties who have so long slumbered on their rights, if they had any, and been so "grossly neglectful of their own interests."

The fact that a patent was issued to San José upon confirmation of her pueblo lands, cannot affect the question. No new title has vested in the complainants thereunder unless they can derive it through the parties holding under the conveyances in question, alleged to be fraudulent. The city holds the title in trust for those who succeed in maintaining their rights under the Teall and Devine conveyances. If Teall's rights through the Devine, and subsequent conveyances and the statute of limitations have been cut off, there is no channel through which they have since returned to these complainants. The parties who have a vested title either under the two conveyances in question, or under the statute of limitations, or both, are the *cestui que trust* of the city of San José.

I am satisfied that the facts stated in the bill are insufficient to take the case out of the first clause of the fourth paragraph of section 338 of the statute of limitations of the state of California, and that the suit is barred by the statute. I am also satisfied that the cause of suit is stale, under the principles relating to the subject long established and enforced by courts of equity. So, also, the bill is insufficient because it fails to set out specifically what were the impediments to an earlier prosecution of the claim; how they came to be so long ignorant of their alleged rights, and the means used by the respondents to keep them in ignorance, and how they first came to a knowledge of their rights.

I am satisfied also, that the bill cannot be truthfully so amended, as to present a case for equitable relief. The parties have already amended twice. Some of the allegations now so, generally, made, must, necessarily, be largely overstated. How is it possible, that all the present respondents, and their numerous grantors intermediate between them and Devine, should have taken active means to conceal, and to successfully conceal from these complainants their rights, however credulous and confiding they may have been? Besides, upon these sweeping allegations embracing, *in solido*, 336 respondents, how can any individual respondent know upon what case he is to be prosecuted? Upon what point as to him, individually, will the blow fall; and whence will it come? How is each individual respondent to know how to prepare for trial under these loose, sweeping, general allegations? The demurrer must be sustained, and the bill dismissed, and it is so ordered.