RHINO v. EMERY et al.

(Circuit Court, S. D. Ohio, W. D. January 12, 1895.)

No. 4,595.

1. EQUITY—CANCELLATION OF DEED—INADEQUACY OF CONSIDERATION.

A bill to set aside a deed alleged that it was procured from the grantor "for the grossly inadequate consideration of $3,000, no portion of which" was ever paid to him, "or to any other person for his use," and that the real estate so conveyed "was soon thereafter sold for more than eight times" that amount. *Held*, that insufficiency of consideration was not shown, it appearing that the transaction was between mother and son, either of whom would have been the heir of the other dying intestate, and that the property, being in a city, might fluctuate largely in value in a short time, the time of the subsequent sale not being stated.

2. JUDGMENT—RELIEF ON GROUND OF FRAUD — ACCOUNTING FOR PROCEEDS OF SALES OF DECEDENT'S REAL ESTATE.

Real estate of a decedent was sold on regular proceedings in a probate court for such sale for payment of his debts. The sales were duly confirmed, and distribution of the proceeds was made, by judgments of that court, having full jurisdiction. *Held*, that one claiming under parties to those proceedings could not maintain a bill seeking to hold others who had received the proceeds accountable therefor, on the ground of fraud and collusion, without first setting aside the judgments, which could not be done in such a collateral proceeding.

3. LIMITATION OF ACTIONS—EFFECT OF FRAUD—NOTICE FROM RECORDS.

A bill charging fraud and collusion by a testatrix and a devisee under her will, in procuring from an intestate, under whom complainant claimed, a deed of certain land to said testatrix for an inadequate consideration, and in procuring land in which said intestate had an interest to be sold in proceedings in the probate court, and in the making and acceptance of devises and bequests contained in the will, and in other transactions, and asking for the cancellation of said deed and an accounting of the proceeds of the intestate's estate in the hands of the devisees of said testatrix and of their grantees, was filed after the time within which complainant was entitled by statute to bring an action to contest the validity of the will. *Held,* that the bill could not be maintained without any averment that complainant made or caused to be made the slightest inquiry in regard to the transactions complained of, as the deed and will were of record, and the records thereof were relied on by complainant to support his allegations of fraud, and to charge the devisees' grantees with notice of the frauds, and the record of the probate court gave full information as to the proceedings therein, even though the papers in the case were, as alleged, off the files.

This was a suit by Gustavus F. Rhino against Thomas J. Emery, John J. Emery, William G. Roberts, trustee under the will of Eliza A. Berry; and in his own right. Howard C. Hollister, as executor of Eliza A. Berry, Sarah A. Weller, and M. E. Sperry, to set aside certain transactions on the ground of fraud, 'and for an accounting. Demurrers by defendants to the bill for insufficiency were sustained, and an amended bill was filed, in which Hollister was not made a defendant. Defendant John J. Emery was not served with process. Defendants Thomas J. Emery, William G. Roberts, and Sarah A. Weller demurred to the amended bill.

The allegations of the amended bill were as follows:

Your orator complains and says that one James Berry intermarried with one Rachel Rolston; and that there were born of said marriage three children, to wit, James Berry, an only son, and two daughters, Nancy Berry and Betsy Berry; and that the said Nancy Berry and Betsy Berry both died without issue; and that the said James Berry, the son of the said James Berry and Rachel Berry, whose maiden name was Rolston, intermarried with one Eliza A. Rhino, a daughter of Abram Rhino and Catherine Rhino, whose maiden name was Catherine Boyd; and the said James Berry, who intermarried with Eliza A. Rhino, as aforesaid, departed this life, testate, in Hamilton county, Ohio, on the ——— day of ———, A. D. 1864, leaving, him surviving, his relict, Eliza A. Berry, and two children born of the marriage last aforesaid, to wit, a son. James Berry, and a daughter, Kate E. Berry, as his next of kin and sole heirs at law; and the said Kate E. Berry intermarried with one Robert Brady, whom she survived, and died testate, without issue, July, A. D. 1882; and the said Eliza A. Berry, relict of the said James Berry, died testate, on the ——— day of ———, A. D. 1886; and the said James Berry died intestate, without issue, and unmarried, May 13, A. D. 1891, and at the time of the death of the said James Berry, last aforesaid, to wit, on the 13th day of May, A. D. 1891, the blood of the Berrys and Rolstons, his ancestors, on the paternal line, became extinct.

And your orator further says that, at the time of the death of the said James Berry, the son of James Berry and Eliza A. Berry, aforesaid, to wit, on the 13th day of May, A. D. 1891, your orator, Gustavus F. Rhino, and the defendant M. E. Sperry, were the nearest of kin and sole heirs at law of the said James Berry, last aforesaid, of the name or family of Rhino; that is to say, your orator was the only son and the said M. E. Sperry was the only daughter of John Rhino, a son of Abram Rhino and Catherine Rhino, whose maiden name was Catherine Boyd, as aforesaid, which said John Rhino, then deceased, in his lifetime was the brother of the said Eliza A. Berry, a daughter of the said Abram Rhino and Catherine Rhino, whose maiden name was

Catherine Boyd, as aforesaid, and which said Eliza A. Berry was the mother of the said James Berry, aforesaid, who died May 13, A. D. 1891; so that your orator, Gustavus F. Rhino, and the said defendant M. E. Sperry, stood in the relationship of first cousins to the said James Berry last deceased, as aforesaid, and so your orator, as heir at law and next of kin, became entitled upon the death of the said James Berry, on the 13th day of May, A. D. 1891, as aforesaid, to one moiety of the estate, real, personal, and mixed, which the said James Berry was seised of or entitled to at his death, by virtue of the statute in such case made and provided; the other children of the said Abram Rhino and Catherine Rhino, whose maiden name was Boyd, as aforesaid, to wit, Jefferson Rhino, who in his lifetime was a brother of the said Eliza A. Berry, and Prudence Rhino, who in her lifetime was a sister of the said Eliza A. Berry, having each departed this life without leaving any lawful issue.

Your orator further says that the said James Berry, the son of the said James Berry and Rachel Berry, whose maiden name was Rolston, as aforesaid, at the time of his death, was seised of an estate in fee simple in the lands and tenements situate in the city of Cincinnati, Hamilton county, Ohio, and described as follows, to wit: "All that certain lot of ground, with the improvements thereon, in the city of Cincinnati, state and county aforesaid, situate on the north side of Centre (now Longworth) street, commencing 72 feet and 6 inches west from the northwest corner of Race and Centre (or Longworth) street, at the southwest corner of lot No. 103, and running northwardly with the line of said lot 82 feet to a 10-foot alley; thence west, with said alley, 27 feet; thence south, at right anges, 82 feet, to Centre (now Longworth) street; thence east, with Centre street, 27 feet, to the place of beginning. * * * Also, the real estate following, to wit: All that certain lot or parcel of land situate, lying, and being in the city of Cincinnati, county of Hamilton, and state of Ohio, on the northwest corner of Water and Race streets, fronting on Water street 49½ feet (or half the width of a full lot), and on Race street from said corner to Benjamin Little's brick house 26 feet, be the same more or less, and extending back so far as to form right angles with the lines of said parcel of ground; being part of lot numbered on the general plan of said city 413, being the same premises conveyed to James Berry by Richard Air, sheriff of Hamilton county, Ohio. Also, the real estate following, to wit: All that certain lot of land in the city of Cincinnati, in the western part thereof, fronting on the south side of Third street 22 feet, and running back to a 10-foot alley; being the only lot between James Ferris' lot, heretofore purchased by him from Harrison, and the lot reserved by said Harrison for himself, and being the same lot conveyed to James Hindman by Richard Harrison by deed recorded in Book No. 65, page 234, Hamilton County Records, and being the same premises conveyed by said Hindman to said James Berry."

Your orator further says that the said James Berry died possessed of considerable property, and by his will be appointed and constituted his said relict, Eliza A. Berry, his executrix, without bond, provided she remained single and never married, and devised to her a life estate in all of said real estate of which he so died seised and possessed as aforesaid, and bequeathed to her, absolutely, all his personal estate. And, by said last will and testament, the said James Berry devised the remainder of his said real estate, expectant upon the determination of the life estate therein devised to his said relict Eliza A. Berry, to his two children, the said James Berry and Kate E. Berry, and provided also that in case of the death of either of his said children, surviving his said relict, Eliza A. Berry, the surviving child should take the portion of the one so dying; and he also provided by his said will that his said relict, Eliza A. Berry, should have power and authority to sell and dispose of all of his said real estate, or any part thereof, for the sole purpose of paying the debts of the said testator, James Berry, aforesaid, all of which will more fully and at large appear by a certified copy of said will, herewith filed, and made part of this bill, marked "Exhibit A."

Your orator further says that the said Eliza A. Berry qualified as executrix under the last will and testament of her said husband, the said James Berry, and proceeded to administer upon the estate of her said husband, James Berry, deceased, and paid off the indebtedness of the estate, which was small, within

the five years next ensuing after the death of the said James Berry, as your orator is advised and charges the fact to be.

Your orator further says that Kate E. Brady, the daughter of the said James Berry and Eliza A. Berry, in the month of July, A. D. 1882, died, testate, leaving her said mother, Eliza A. Berry, and her said brother, James Berry, her surviving, and, by her last will and testament, devised, among other things, all her real estate to her mother, Eliza A. Berry; and that the said defendant William G. Roberts, as her counsel, drafted her said last will and testament, and was one of the attesting witnesses thereto, all of which will more fully and at large appear by a certified copy of said will, herewith filed, and made part hereof, marked "Exhibit B."

Your orator further says that the said intestate, James Berry, the only son of the said James Berry and Eliza A. Berry, was from his early infancy, and during the whole period of his life, a person of unsound mind, and of weak understanding, and wholly incapable at any period of his life of transacting any business by reason of his mental incapacity and imbecility; and that upon the death of the said Kate E. Brady, in the month of July, A. D. 1882, who, while living, had been a barrier to the perpetration of the frauds hereinafter mentioned, the said defendant William G. Roberts and the said Eliza A. Berry, his mother, immediately combined and confederated for the fraudulent purpose of securing the title to the said real estate derived by the said intestate from the will of his father, James Berry, the son of the said James Berry and Rachel Berry, whose maiden name was Rolston, and depriving the said intestate, James Berry, of the same, in order that they themselves might appropriate the property of the said James Berry to their own exclusive use and benefit, as in fact they thereafter did, as will appear hereinafter in this bill.

Your orator further says that in the month of August, A. D. 1882, the said Eliza A. Berry had much passed her three score years and ten, and that her son, the said James Berry, was verging to the age of 40 years, and that the said Eliza A. Berry had a life estate in all the real estate of which her said husband, James Berry, died seised, and which is fully set forth and described in his said last will and testament, and that the said James Berry, her son, was at that time wholly without fortune or estate, except his fee-simple interest in the whole of said real estate, expectant upon the death of his mother, Eliza A. Berry, which at her advanced age, in the natural order of things, would soon drop and fall into possession; yet your orator says that the said William G. Roberts, as the legal adviser of the said Eliza A. Berry, and a person having great influence over her, acting in concert with the said Eliza A. Berry, and influencing her, they together, on the 21st day of August, A. D. 1882, fraudulently procured a deed from the said James Berry, who at the time was a person of unsound mind, conveying all of said real estate to the said Eliza A. Berry, for the grossly inadequate consideration of $3,000, no portion of which said sum was ever paid to the said James Berry or to any other person for his use, and the said Roberts both drafted the said deed of conveyance and signed the same as one of the attesting witnesses, all of which will more fully and at large appear by a certified copy of said deed, herewith filed, and made part hereof, marked "Exhibit C." The said real estate so conveyed as aforesaid was soon thereafter sold for more than eight times the amount of the said $3,000, as will hereinafter appear.

Your orator further says that on the 13th day of April, A. D. 1885, the said William G. Roberts and Eliza A. Berry procured an order from the probate court of Hamilton county, Ohio, appointing the said William G. Roberts statutory guardian of the said James Berry, who had then attained the age of 42 years, all of which will more fully and at large appear by a certified copy of said order, herewith filed, and made part of this bill, marked "Exhibit D."

And your orator further says that on the 16th day of April, A. D. 1885, the said Eliza A. Berry, as executrix of the estate of the said James Berry, deceased, in furtherance of her fraudulent scheme, and under the fraudulent pretense of paying the debts of the testator, the said James Berry, deceased, instituted suit in the probate court of Hamilton county, Ohio, against herself and against her son, the said James Berry, and against the said William G. Roberts, guardian of her said son, James Berry, for the purpose of selling

part of said real estate, under the pretense of paying the debts of the testator, the said James Berry, deceased, all of which had been paid or barred by the statute of limitations long prior thereto; and that on the 18th day of April, A. D. 1885, she obtained a judgment for the sale of said lands, long after her power to sell had become inoperative, and soon thereafter, to wit, on the 6th day of May, A. D. 1885, obtained an order confirming said sale, and ordering deeds conveying to the purchasers the said lands so sold under the irregular and void proceedings in said suit, and the said William G. Roberts acted as one of the attorneys of record in said suit for the said Eliza A. Berry, and rendered all the active service for her in the several characters in which she there appeared. Said suit was numbered on the docket of the probate court No. 3,943. And the pleadings therein, after diligent search, at the time of the institution of this suit, and for many months prior thereto, appeared to have been lost, mislaid, or abstracted from the files of the said probate court, and the same so remained off the files of said court and out of the custody of said court until the month of March, A. D. 1894, when the same were discovered, and found to be in the hands and possession of the defendant William G. Roberts, who all the time since the institution of this suit had knowledge of their whereabouts and your orator's desire for their inspection.

Your orator further says that, by the petition in said suit for the sale of said real estate, it appears upon the face of the petition that all the pretended debts of the said James Berry, who had departed this life more than 21 years prior to the filing of the petition in said suit, had been barred by the statute of limitations, and the power of sale of said executrix had become inoperative in the matter of the sale of said lands for the payment of debts.

Your orator further says that, among the claims in said suit, which was recognized and enforced as a debt of the said testator, James Berry, was a fraudulent, fictitious, and unreal note, pretended to have been executed by said Eliza A. Berry and the said James Berry, her son, and the said Kate E. Brady, her daughter, to one Henry Schwener, for the sum of $3,000, due three years after date, bearing interest at the rate of 7% per annum, together with six interest-bearing notes, each for the sum of $105, to secure the payment of the interest on said pretended note for $3,000. Said pretended note, together with the indorsements thereon, is expressed in the words and figures following, to wit:

"$3,000.                                        Cincinnati, March 4, 1880.

"Three years after date, we or either of us promise to pay to the order of Henry Schwener $3,000, with interest from date and until paid at the rate of 7% per annum, payable half-yearly, secured by mortgage, value received, but the interest to date of maturity has been provided for by six notes, of even date herewith, for $105 each, made by us payable to the order of said Schwener in 6, 12, 18, 24, 30, & 36 months after date, respectively; and it is agreed by us that, in case of default of payment of any one of said interest notes at maturity, this note for $3,000, the principal, shall be considered as due, payable, and collectible, and the mortgage securing the same foreclosable immediately after any such default.

                                                        her
                                        "Eliza A. X Berry.
                                              mark.
                                        "James Berry.
                                        "Catherine E. Brady.

"Attest:   C. A. Kebler."

Indorsed:
"$3,087.   Without recourse on me in any event whatever.
                                                "Henry Schwener.

"$3,087.00.                                   Cin., O., Feb. 3, A. D. 1887.

"Received of Howard C. Hollister, executor of last will and testament of Eliza A. Berry, deceased, the sum of three thousand and eighty-seven dollars, in full for the balance of principal and interest of the within note and mortgage, paid No. 1,757, of H. R. & H., Attys.

                                        "Kebler, Roelker & Jelke, Attys."

And your orator further says that, to secure the payment of said fraudulent, pretended, fictitious, and unreal notes above mentioned, a pretended, fictitious, fraudulent, and unreal mortgage was executed to the said Henry Schwener on the Longworth street property hereinabove described, bearing date March 4, A. D. 1880, all of which will more fully and at large appear by a copy of said petition. herewith filed, and made part hereof, marked "Exhibit Berry," and by a copy of said mortgage, herewith filed, and made part hereof, marked "Exhibit Schwener."

Your orator further says that the said Eliza A. Berry, in her lifetime, sometimes alleged and pretended, and the said defendant William G. Roberts and the Emery defendants and the defendant Sarah A. Weller now allege and pretend, that, prior to his death, the said testator, James Berry, executed and delivered a note to one H. E. Alexander for the sum of $3,000, bearing interest at the rate of 7% per annum, and, to secure the payment of the same, executed a mortgage upon the said Longworth street property aforesaid for said amount, and that said note and mortgage remained unpaid, and that the said Schwener note and mortgage were executed to raise money to pay off said note and mortgage to said Alexander, and that the same were so paid by the money borrowed from the said Schwener, and that said Schwener, having possession of said notes and mortgage executed to him by the said Eliza A. Berry, James Berry, and Catherine E. Brady, indorsed and transferred the same without recourse, and that the said Schwener was a man of large means, engaged in the business of buying and selling notes and mortgages; whereas your orator charges the contrary thereof to be the truth, and says that the said mortgage to said Alexander had long been paid prior to the said suit instituted by the said Eliza A. Berry on the 16th day of April, A. D. 1885, for the payment of debts of the said testator, and that the said Eliza A. Berry, James Berry, and Kate E. Brady never borrowed any money whatever from the said Henry Schwener, nor obtained anything whatever of value from him, and that the said Henry Schwener never loaned them any money whatever or advanced to them anything of value whatever, and that the said Schwener never indorsed and transferred said notes without recourse or in any other manner, and that he never had the possession of said note and mortgage at any time, and that he never knew of their existence, and that he never knew or met the said Eliza A. Berry or Catherine E. Brady or James Berry, and that he never received any money by reason of or on account of said notes and mortgage, and that he was not a man of large means, and that he did not deal in buying and selling notes and mortgages, but, on the contrary, was a bookkeeper, on a salary, for the firm of F. Jelke & Son, at No. 47 Walnut street, Cincinnati, and the said Schwener was a man of small means, who could not at any time have loaned the sum of $3,000 aforesaid, and never did so loan the said sum of $3,000 to the said Eliza A. Berry, James Berry, and Catherine E. Brady, or to any one of them, and that no money as proceeds of said fraudulent, fictitious, and unreal note and mortgage was ever paid to the said H. E. Alexander.

Your orator further says that the mortgage to H. E. Alexander was on the 10th day of March, 1863, executed by the said James Berry and the said Eliza A. Berry, his wife, on the said Longworth street property above mentioned, to secure a note for $3,000, due one year after date, with interest at 7% per annum, and at the time of the institution of said suit by Eliza A. Berry for the sale of lands, as aforesaid, 22 years, 1 month, and 6 days had elapsed since the making and signing of said note and mortgage, and the power of said Eliza A. Berry to sell under the will had become inoperative, the debt having long since been paid, and presumably barred by the statute of limitations, all of which will more fully and at large appear by an office copy of said mortgage, herewith filed, and made part hereof, marked "Exhibit Alexander."

Your orator further says that on the 23d day of August, A. D. 1886, the said Eliza A. Berry made her last will and testament, and the same was drafted by the said defendant William G. Roberts, and that she soon thereafter departed this life, and that on the 9th day of September of said year the same was duly admitted to probate in Hamilton county, Ohio, and by her said last will and testament she appointed the said defendant William G.

Roberts trustee under said will, and also devisee, and that he, the said Roberts, was one of the attesting witnesses to said will, and Howard C. Hollister, a member of the law firm of which said Roberts was also a member, was appointed executor of her said will by the said Eliza A. Berry, at the instance of said William G. Roberts, and there came into his hands, as executor, various sums of money which he as executor duly turned over to the said William G. Roberts, trustee and devisee, as aforesaid.

Your orator further says that, under the suit above mentioned for the sale of lands, there was about $12,000 realized from said fraudulent sales; and that there came into the hands of the executor $8,120.64, part of the proceeds of said sale; and that no part of said moneys was at any time accounted for or paid over to the said James Berry, in his lifetime, by said William G. Roberts, trustee as aforesaid.

Your orator further says that the said Eliza A. Berry, by her last will and testament, after making some provision for the support and maintenance of her said son, James Berry, among other things devised and bequeathed to the said William G. Roberts and Sarah A. Weller all of her said estate, to be equally divided by them at the death of her said son, all of which will appear more fully and at large by a certified copy of said last will and testament, herewith filed, and made part hereof, marked "Exhibit E."

Your orator further says that the said William G. Roberts, with a full knowledge of the provisions of the last will and testament of the said James Berry, and of the demented condition of the son, the said James Berry, and the fraud practiced upon the latter by the deed above mentioned which was procured from him, conveying his expectancy in his father's estate to his mother, Eliza A. Berry, yet, nevertheless, accepted the devises and bequests under the last will and testament of the said Eliza A. Berry and of the trust conferred upon him by the said will, in fraud of the rights of the said intestate, James Berry.

Your orator further says that on the 9th day of September, A. D. 1890. the said William G. Roberts, as guardian of the said James Berry, procured an order of the probate court of Hamilton county, Ohio, founded upon his own affidavit, committing the said James Berry as an insane person to the asylum for the insane at Longview, Hamilton county, Ohio, where the said James Berry, on the 13th day of May, A. D. 1891, departed this life, at which time your orator and the said M. E. Sperry, as next of kin and sole heirs at law of the said intestate, James Berry, became entitled upon his death, in equal moieties, each of the estate of the said James Berry, real, personal, and mixed, by virtue of the statute in such case made and provided.

Your orator further says that at the time of the death of the said intestate, James Berry, there remained, unconsumed and undisposed of, a valuable parcel of land, on the north side of Longworth street, between Race and Elm streets, now known as "No. 48 Longworth Street," and also a considerable amount of money, proceeds of the sale of said lands; and that the said William G. Roberts, as trustee and devisee of the last will and testament of the said Eliza A. Berry, together with his wife, Annie M. Roberts, and the said Sarah A. Weller, by deed bearing date December 8, 1891, in consideration of the sum of $16,700, sold and conveyed the said real estate to the said Thomas J. Emery and the said John J. Emery, all of which will more fully and at large appear by a certified copy of said deed, herewith filed, and made part hereof, marked "Exhibit F"; and that if said money for the purchase of said lands was paid by the said Emery defendants to the said Roberts, as trustee and devisee as aforesaid, he now holds the same in trust for your orator and the said M. E. Sperry, the heirs at law of the said intestate, James Berry.

Your orator further says that the said William G. Roberts, as trustee under the will of said Eliza A. Berry, filed his final account in the probate court of Hamilton county; and that the same, on the 3d day of November, A. D. 1891, was allowed and confirmed; and that in said account he filed, as of date September the 22d, A. D. 1891, what purports to be a settlement in full as trustee with the said Sarah A. Weller, as devisee and legatee under the last will and testament of the said Eliza A. Berry. Said settlement is expressed in the words and figures following, to wit:

"Cin., O., Sept. 22, A. D. 1891.

"Recd. of W. G. Roberts, trustee under the will of Eliza A. Berry, dec., the sum of $600, in cash, in full for my share of the personal estate and property and proceeds thereof, and the rents and issues received by him; and this is a final settlement with him as such devisee and legatee under the will of said deceased.

her

"Mrs. Sarah A.  X  Weller.

mark.

"Witness: Nellie G. Robinson."

Your orator further says that he believes and charges the fact to be that the said Emery defendants have not paid the said $16,700, purchase money, to the said Roberts, but that they have some secret understanding by which said payment is deferred, and that a trust of some kind or nature now subsists between them, and that the said Sarah A. Weller has not received any portion of the said $16,700, proceeds of sale, as alleged.

Your orator further says that all of the frauds alleged in this his amended bill, hereinabove enumerated, have been discovered by him within four years next before the institution of this suit, except such as have been discovered in the present month of March, since the return of the papers in said suit No. 3,943.

Your orator further says that the said defendants Thomas J. Emery and John J. Emery, at the time of their purchase of said Longworth street property, were in a position to know, and did know, the provisions of the will of the said James Berry, and of the demented condition of his son, James Berry, the intestate, and that the said Eliza A. Berry had but a life estate in the lands whereof the said testator died seised, and that the power to sell under said will alone for the payment of the said testator's debts, and of the fact that there were no debts of the testator remaining unpaid at the time of the institution of said suit aforesaid, for the pretended payment of debts, more than 21 years after the death of the testator; and they likewise had notice of the irregular and void proceedings in said suit, as reference to the proceedings therein will show, and that the defendant William G. Roberts was the attorney for the said Eliza A. Berry in the institution and conducting of said suit, and at the same time guardian for the said intestate, also a defendant in said suit, and that the said Roberts represented all parties to said suit, himself, as guardian, being a party, and that the relation of parent and child existed between the said Eliza A. Berry and the said intestate, James Berry, and that the relation of trustee and cestui que trust also existed between the said William G. Roberts and the intestate, James Berry, and that said Roberts in said suit represented all interests, as attorney, of the parties to said suit, being the said Eliza A. Berry, both plaintiff and defendant, in her different characters, and the said William G. Roberts, as guardian of the said intestate, James Berry, and they also had notice that the said intestate, James Berry, had, but a short time before the institution of said suit, conveyed his expectancy as sole heir at law in all the real estate of which his said father died seised, to his mother, the said Eliza A. Berry, for the grossly inadequate consideration of $3,000, no part of which was ever paid to him, and that one parcel of said real estate alone was sold to the said Emery defendants soon after the death of the said intestate, James Berry, for the sum of $16,700, and that the other two parcels of said land were sold under the proceedings in said suit for about $12,000; and the said Emery defendants also had notice of the Schwener note and mortgage above mentioned, and of the Alexander mortgage above mentioned, and of the will of the said Eliza A. Berry, drafted and attested by the said William G. Roberts, who was made and constituted under said will both trustee and devisee, and of the adjudication of lunacy aforesaid against the said intestate, James Berry, and that he was, from the cradle to the grave, an imbecile, wholly incapable of making a deed; and they also had notice that the said Roberts had accepted the devises and bequests, along with the trust under the said will of Eliza A. Berry, with a full knowledge of the frauds perpetrated upon the said intestate, James Berry, and of the fact that the said William G. Roberts was an active participant with the said Eliza A. Berry in all her acts

and doings in the perpetration of the said frauds upon the said intestate, James Berry, and, further, that the said Roberts, by undue influence, had perpetrated a fraud upon the said Eliza A. Berry, an aged and ignorant woman, in obtaining from her the testamentary dispositions in his favor, contained in her said last will and testament, in fraud of the rights of the heirs at law, your orator and the said M. E. Sperry, the nearest of kin and next of blood to the said intestate, James Berry.

The prayer of the amended bill was as follows:

Your orator prays that the said defendants William G. Roberts, trustee under the will of Eliza A. Berry, and in his own right, and the said Sarah A. Weller, may be compelled to render a full and perfect account of the estate of the intestate, James Berry, which came into their hands; and that they be charged with the amount of all money paid into the hands of William G. Roberts by Howard C. Hollister, as executor of Eliza A. Berry, and divided between them, with interest thereon, from the time the same came into their hands, respectively; and that the deed from the said James Berry to Eliza A. Berry be rescinded, canceled, and annulled for fraud; and that the said William G. Roberts and Sarah A. Weller be adjudged volunteers, and held as trustees for whatever amount of money or other property belonging to the estate of the intestate, James Berry, that may have come into their hands through the acts and doings of Eliza A. Berry during her lifetime and under her said will; and that the said deed from the said William G. Roberts and wife and Sarah A. Weller, executed to the said Thomas Emery and John J. Emery, be canceled, rescinded, and held for naught; and that the said Thomas J. Emery and John J. Emery be required to account for the rents and profits of the said lands since the date of the said conveyance to them, and during their possession and enjoyment of them; and that your orator shall have, generally, such other and further relief as the nature of his case may require.

Blackburn, Hounshell & Rhyno, for complainant.
Herbert Jenney, for defendant.

SAGE, District Judge. The suit is, in substance, to set aside certain transactions, on the ground of alleged fraud. The consideration set forth in the deed made by James Berry, Jr., to his mother, Eliza A. Berry, on the 21st of August, 1882, to wit, $3,000, is sufficient to support it. The transaction was between mother and son. They were heirs to each other. Either dying intestate, the other would have been his or her heir. The averments in support of the charge that the consideration was inadequate, that the property was afterwards sold for a much larger sum, are by no means conclusive. How much time intervened before that sale is not set forth. Values of real estate in cities not infrequently fluctuate largely in a short time. Although it is averred that no part of the consideration was paid to James Berry, Jr., or to any other person for his use, there is no averment that it was not applied to his use.

As to the proceedings in the probate court and the sales made thereunder, the proceedings were all regular, and the sales were duly confirmed. Distribution of the proceeds was made by the judgment of that court, which had full jurisdiction in the premises. Those proceedings have never been set aside. It is quite true that a judgment may be impeached in equity for fraud and collusion, but only by strangers, and, as to strangers, only by those who, if the judgments were given full credit and effect, would be prejudiced in regard to some pre-existing right. Freem. Judgm. § 335, and cases

there cited. No judgment can be impeached for fraud by a party or privy to it. Id. § 334, and cases cited thereunder. The complainant and the defendant M. E. Sperry are both in privity to James Berry, Jr., and Eliza A. Berry, his mother. Their claim is expressly as first cousins and heirs of said James Berry.

The bill does not seek to set aside those judgments, but it does seek to avoid them by holding Roberts and Mrs. Weller accountable for the proceeds of the sales made thereunder. That cannot be accomplished without first setting aside the judgments, which cannot be done in a collateral proceeding. So long as the judgments remain unreversed, payments made under them must stand.

The death of Eliza A. Berry occurred in 1886, and her will was probated in September of that year. By that will, she gave all her property, which would include the property conveyed to her by her son under his deed in 1882, to Roberts, in trust for the support of her son, and, upon his death, divided the residue between Roberts and Mrs. Weller. James Berry died May 13, 1891, and, by the will of Eliza Berry, whatever then remained of her estate passed by its terms to Roberts and Mrs. Weller. On December 8th of that year, the real estate on Longworth street was conveyed to the Emerys. There is nothing in the bill charging Mrs. Weller with any connection with the alleged combinations and confederations. It is claimed that she derived a benefit from them, but that is not sufficient to hold her. Eliza A. Berry's will was probated and of record in 1886. The complainant had the right, under section 5858 of the Revised Statutes of Ohio, to contest it. The provision is that a person interested in a will may contest the validity thereof in a civil action in a court of common pleas of the proper county. By section 5866 the action must be brought within two years. There are certain exceptions which do not apply in this case.

In Wood v. Carpenter, 101 U. S. 136, it is held that a party seeking to avoid the bar of the statute on account of fraud must aver or show that he used due diligence to detect it, and that, if he had the means of discovery in his power, he will be held to have known it. In this class of cases, says the court, the plaintiff is held to stringent rules of pleadings and evidence, and must clearly bring himself within the exceptions which he claims. The court, referring to the case before it, says:

"It will be observed, also, that there is no averment that, during the long period over which the transactions referred to extended, the plaintiff ever made or caused to be made the slightest inquiry in relation to either of them. The judgments confessed were of record, and he knew it. It could not have been difficult to ascertain, if the facts were so, that they were shams."

In Teall v. Slaven, 40 Fed. 774, it was held that a party alleging fraud must be diligent in making inquiry; that means of knowledge are equivalent to knowledge; that a clue to the facts which, if diligently followed, would lead to discovery, is in law equivalent to a discovery.

In Godden v. Kimmell, 99 U. S. 211, the rule is stated that the cestui que trust "should set forth in the bill specifically what were the impediments to an earlier prosecution of the claim, and how

she or he came to be so long ignorant of their alleged rights." To the same effect, see Marsh v. Whitmore, 21 Wall. 185; Richards v. Mackall, 124 U. S. 187, 8 Sup. Ct. 437; Speidel v. Henrici, 120 U. S. 377, 387, 7 Sup. Ct. 610.

There is no averment in the bill that the complainant ever made or caused to be made the slightest inquiry in regard to the transactions complained of. The deed and will were of record. The complainant relies upon those records to support his allegations of fraud and his averment that the defendants Thomas J. and John J. Emery were chargeable with notice of the frauds averred. If so, the complainant also was in like manner chargeable. It is averred that the papers in the case in the probate court were off the files. But there was the record of the court, from which the complainant could have obtained all the information that he could have derived from the papers themselves.

It was suggested, orally, that the record was destroyed when the courthouse was burned. This is dehors the record; but, if the court could take judicial notice of the burning of the courthouse, it could also take judicial notice of the date of the burning, which was in March, 1884, more than a year before the institution of the suit in which the record under consideration was made.

A demurrer to the original bill for insufficiency having been sustained, and the amended bill, framed to cure the defects of the original bill, being now found to be insufficient, the demurrer to it will be sustained, and the bill dismissed.